**Barton F. SCHOENEMAN, Individually and d/b/a Mid West Contracting Company, Appellant,**

**v.**

**A. Y. McDONALD MANUFACTURING COMPANY, Appellee.**

**No. 6.**

Court of Civil Appeals of Texas.

Tyler.

Feb. 20, 1964.

Rehearing Denied March 19, 1964.

Joe W. Matthews, Matthews & Weaver, Dallas, for appellant.

Richard H. Hodges, Scurry, Scurry & Hodges, Dallas, for appellee.

SELLERS, Justice.

This is an appeal from the entry of a summary judgment in the trial court in favor of the cross-defendant, A. Y. McDonald Manufacturing Company, against cross-plaintiff in the trial court, Barton F. Schoeneman, individually and doing business under the name of Mid West Contracting Company.

The cross-plaintiff in the trial court will be referred to as Mid West and the cross-defendant as McDonald.

The suit is one to recover from McDonald for the breach of contract to furnish double wrap pipe according to the contract and not single wrap as was furnished by McDonald. We quote a portion of cross-plaintiff's pleadings:

"Now comes Barton F. Schoeneman, d/b/a Mid West Contracting Company,

who resides in Dallas County, Texas, hereinafter called Mid West, who complains of A. Y. McDonald Manufacturing Company, a corporation, hereinafter called McDonald, and for cross-action or counterclaim respectfully shows to the Court:

"1. A few months prior to April 4, 1956, C. H. Leavell and Company and Dan R. Ponder, Inc., hereinafter called Leavell and Ponder, as prime contractor entered into an agreement with the United States of America for the construction of 944 units of family housing at Abilene Air Force Base, Abilene, Texas; that on or about said date of April 4, 1956, Mid West, as a subcontractor under Leavell and Ponder, prime contractor (and as authorized or permitted by the said prime contract) entered into an agreement with Leavell and Ponder whereby Mid West agreed to furnish the materials and labor necessary for installation of the exterior gas system required by the prime contract for the construction of said family housing units; that performance of Mid West's subcontract primarily consisted of furnishing of materials and labor for installation of gas pipe of various sizes and the necessary fittings, valves and other appurtenances; that prior to the time Mid West was awarded the sub-contract for installation of the exterior gas system, McDonald submitted to Mid West a written quotation to furnish the steel pipe for use in installation of said gas system and McDonald had full notice and knowledge that the pipe it proposed to furnish was to be used only for installation of the exterior gas system required by said family housing units; that after Mid West was awarded the contract by Leavell and Ponder for installation of the said gas system, the furnishing of the necessary, fittings, valves, etc., was discussed with W. S. Hamilton, the duly authorized agent and representative of McDonald, at all times acting within

the scope of his authority, and Mid West pointed out to said Hamilton that the materials described in the previous quotation did not meet the specifications applicable to the exterior gas system and it was necessary for Mid West to secure pipe which did meet the specifications applicable to the exterior gas system in order for Mid West to comply with the subcontract made with Leavell and Ponder and thereupon said Hamilton was furnished with and read a copy of the specifications applicable to the materials required for installation of the gas system and Mid West and its employees discussed such specifications and the various details of same with the said Hamilton and thereupon Hamilton on behalf of McDonald entered into an oral agreement to supply the pipe for installation of the exterior gas system and agreed that the same would be in conformity with the specifications, a copy of which is attached hereto as Exhibit 'A' and made a part hereof; that McDonald and its representative, Hamilton, had full notice and knowledge at all times that said pipe to be furnished for installation of the exterior gas system was to be used for the transmission of natural gas under pressure and that such substance was highly inflammable and explosive; that subsequently McDonald did supply Mid West with the quantities and sizes of pipe necessary for installation of the gas system and Mid West used the same in the installation of such gas system without knowledge or notice of any defect therein or that the pipe actually furnished by McDonald did not meet the wrapping provisions or the specifications; that at all times Mid West relied upon the previous agreement of McDonald through its agent and representative, W. S. Hamilton, that the pipe and coating thereof would be or was in conformity with the specifications; that later and along in November of 1957 the Abilene Air Force Base authorities discovered

that the pipe furnished Mid West by McDonald and installed by Mid West was not in conformity with the specifications in that such pipe had been given only a single wrapping of coal-tar enamel and asbestos felt whereas a double wrapping of these materials was required by the specifications; that with reasonable promptness Mid West notified McDonald that the pipe it had furnished for installation was not in conformity with the specifications.

"2. Subsequently, the Abilene Air Force Base authorities acting under the terms and provisions of the specifications, the prime contract with Leavell and Ponder and the other applicable contract documents, called upon prime contractor to remove all of the pipe installed and completely reinstall the entire gas system with pipe wrapped in accordance with the specifications and demanded that such be done and thereupon Leavell and Ponder made the same demand upon Mid West. Mid West duly notified McDonald of said demand about which McDonald did nothing and because of that failure on the part of McDonald, Mid West and Leavell and Ponder worked out an arrangement with the Air Force Base authorities which was in fact a reasonable compromise whereby only service lines were to be removed and replaced with pipe wrapped in accordance with the specifications and that the gas mains were to be provided with a cathodic system for protection from corrosion arising from Electrolysis; that by virture of that arrangement Mid West furnished the material, labor and other services reasonably necessary to rehabilitate the gas system while it was the obligation of McDonald to supply such material, labor and services; that following notification of Mid West by Abilene Air Force Base authorities through the prime contractor, Leavell and Ponder, that the pipe furnished by McDonald and installed by Mid West was not wrapped in accordance with the specifications, it was reasonably necessary for the protection of the inhabitants of the housing project that extended investigation and repairs be made and on account thereof Mid West incurred and paid the reasonable and necessary expenses; that in making said investigation and repairs and replacing the service lines and providing the mains with cathodic protection, Mid West reasonably and necessarily expended the sum total of $68,717.64 for labor, materials and other services as shown by statement thereof hereto attached identified as Exhibit 'B' and made a part hereof.

" * * *

"4. That under the oral argument made by Hamilton on behalf of McDonald, Hamilton, acting in the scope of his authority as agent and representative of McDonald, the said McDonald expressly and impliedly warranted that the pipe furnished would be in conformity with the wrapping requirements of the specifications and guaranteed such pipe against defects in the wrapping thereof for a period of one year from completion of the installation. That the defect in the wrapping as hereinbefore alleged did appear within said one year period and McDonald was duly notified thereof by Mid West; that at and before the time McDonald, through its agent and representative, Hamilton, orally agreed to furnish the pipe to Mid West, McDonald was on full notice and had full knowledge of the use intended to be made of the pipe and expressly and impliedly warranted that the pipe furnished would be reasonably suitable for the purpose; that the defect in the wrapping of said pipe was concealed or latent and not discoverable upon reasonable inspection, which was made by Mid West and persons employed by the Air Force for that purpose; that such pipe as it was furnished was not reasonably suitable for

the intended purpose, but was wholly unsuitable; that on account of the breach of said warranties, express and implied, and the defective condition of the wrapping of the pipe supplied, Mid West has sustained special damages in the several amounts hereinbefore alleged."

Sworn to by attorney for plaintiff.

In Exhibit "A," we find the following:

"The pipe covering shall consist of a coal-tar priming coat, a coat of coal-tar enamel, a wrapper of asbestos felt, a second coat of coal-tar enamel, a second wrapper of asbestos felt, and a wrapper of kraft paper or a coat of water-resistant white-wash, applied in the order named and conforming to the requirements of American Water Works Association Standard Specification AWWA 20451 in all respects as to the materials, methods of application, tests, and handling, except that interior lining will not be required."

McDonald answered with a number of special exceptions to Mid West's petition, some of which were sustained by the trial court, but Mid West did not amend its petition.

McDonald also plead waiver of defects in the failure to double wrap the pipe and set up estoppel against the cross-plaintiff because the pipe was actually used.

A number of depositions were taken by the parties, and they are a part of this record.

The cross-defendant, McDonald, filed his motion for summary judgment. Paragraphs one, two, and three of said motion are as follows:

"The Cross-Plaintiff, Barton F. Schoeneman, Individually and d/b/a Mid West Contracting Company, seeks to recover upon his claim as pleaded in his Second Amended Cross Action.

"That Cross-Defendant, A. Y. McDonald Manufacturing Company, has answered herein.

"The pleadings, depositions and admissions on file show there is no genuine issue as to any material fact and that this Cross-Defendant, the moving party, is entitled to have judgment rendered in its behalf as a matter of law."

The trial court sustained this motion and entered judgment for the cross-defendant, McDonald; and from this judgment, the cross-plaintiff has duly prosecuted this appeal.

Appellant's first two assignments of error are as follows:

"THE TRIAL COURT ERRED IN GRANTING A SUMMARY JUDGMENT IN FAVOR OF APPELLEE IN THIS CASE AS THE PLEADINGS AND EVIDENCE REFLECT THE EXISTENCE OF GENUINE ISSUES OF MATERIAL FACTS BETWEEN THE PARTIES PRECLUDING A JUDGMENT IN FAVOR OF APPELLEE AS A MATTER OF LAW.

"THE TRIAL COURT ERRED IN GRANTING A SUMMARY JUDGMENT IN FAVOR OF APPELLEE WHEN THE PLEADINGS AND DEPOSITIONS ON FILE REFLECT (A) A CONTRACT BETWEEN APPELLANT AND APPELLEE, (B) A BREACH OF SAID CONTRACT BY APPELLEE, AND (C) DAMAGES SUSTAINED BY APPELLANT AS RESULT OF SAID BREACH."

In the case of *Gulbenkain et al. v. Penn*, 151 Tex. 412, 252 S.W.2d 929, our Supreme Court has laid down the following rules to guide in passing on summary judgments:

"The underlying purpose of Rule of Civil Procedure authorizing summary judgment is elimination of patently unmeritorious claims or untenable de-

fenses, and the rule is not intended to deprive litigants of their right to full hearing on merits of any real issue of fact. Rules of Civil Procedure, rule 166–A.

"The Rule of Civil Procedure authorizing summary judgment puts the burden of proving that there is no genuine issue of any material fact upon the movant, and all doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for a summary judgment. Rules of Civil Procedure, rule 166–A."

Another rule laid down by the Supreme Court is as follows:

"When affidavits, or other summary judgment evidence, disclose facts which render position of moving party untenable, summary judgment should be denied regardless of defects which may exist in pleadings of opposite party. Rules of Civil Procedure, rule 166–A." Womack et al. v. Allstate Insurance Company, 156 Tex. 467, 296 S.W.2d 233.

When these rules are applied to the pleadings of appellant in this case and depositions on file, we think it must be held that there is an issue of fact as to whether McDonald agreed to deliver double wrap pipe for the job, his failure to do so, and the resulting loss to the appellant. When we look to the deposition of Marshall E. Parker, a Consulting Corrosion Engineer, with respect to the value of single wrap and double wrap pipe, he had this to say:

" 'Q. (By Mr. Hodges) As to the question of double wrap being more effective than single wrap, that it would last, that double wrap would last a little longer.

" 'In that installation out there at Abilene, that situation that you investigated, what would your comparison be, say, thirty years one wrap, forty years two wraps, or can you, with any certainty, say?

" 'A. You cannot define the length of a coating in terms of a certain degree of performance.

" 'I would say this, suppose—*let us assume that this*—if you will—*that this system had never been inspected and no cathodic protection system was ever installed on it.*

" 'Q. Yes, sir.

" 'A. * * * then *with the damage that was done,* they would have had a catastrophic number of leaks within, say, four or five years to the point *where the difference between single and double wrap on other lines would not have amounted to anything* (Emphasis ours.)

" 'But had there been no damage on any of the lines, then—and this is a very rough estimate, but these, the comparison, the comparison of the (p. 116) two figures, I believe, is reliable—they would have, again, with single wrap and no damage, except, that is, incidental small amount of lay damage, but not this *chronic damage* they had here on these things, they would have begun to have leaks in the single wrap within, say, five years, and their leaks would have become serious enough to cause them some concern in ten. (Emphasis ours.)

" 'Q. Yes.

" 'A. * * * but with double wrap they'd begun to have leaks in eight or nine years * * * serious concern in fifteen or twenty.' "

Since we sustain appellant's contention that a fact issue exists, requiring a reversal of this judgment and a remanding of the case to the trial court, we can see no worthwhile need for discussion of appellee's contentions which seek to uphold the summary judgment upon an entirely different theory.

The judgment of the trial court is reversed and cause remanded.